# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **THE HARTFORD FIRE INSURANCE COMPANY** | *<br>*<br>* |
| Plaintiff and Counter-Defendant | *<br>* |
| v. | *    Civ. No. **PJM 16-769** <br> * |
| **THE HARBORVIEW MARINA & YACHT CLUB COMMUNITY ASSOCIATION, INC.** | *<br>*<br>*<br>* |
| Defendant and Counter-Claimant | * |

## MEMORANDUM OPINION

Several parties are engaged in a dispute over the 2014 collapse of a pier in Baltimore.

The case began when the Hartford Fire Insurance Company (the "Hartford")—which insured the pier—sued Harborview Marina & Yacht Club Community Association, Inc. ("Harborview")—which owns the pier—seeking a declaratory judgment to the effect that there is no coverage for the collapse of the pier under Harborview's policy with the Hartford. Harborview counterclaimed, asserting that the Hartford breached the insurance contract and failed to act in good faith when it denied coverage under the policy.[1]

Since then, the Hartford and Harborview have brought two other parties into the fold. The Hartford filed a third-party claim against C.A. Lindman, Inc. ("C.A. Lindman")—a contractor which was using the pier to complete construction and maintenance on the façade of a nearby building at the time the pier collapsed. Harborview then filed a third-party cross claim against C.A. Lindman, and thereafter, Harborview filed a third-party complaint against Coleman

---

[1] Harborview originally sought a preliminary injunction requiring the Hartford to maintain the policy at current rates until the instant dispute was resolved. However, the parties stipulated to dismissal of this counterclaim. *See* Stip. Of Dism., ECF No. 21.

Consulting ("Coleman")—the engineer and consultant on the façade construction and maintenance project.

Coleman has filed a Motion to Dismiss Harborview's Third-Party Complaint (ECF No. 53).

For the following reasons, the Motion will be **DENIED**.

## I. FACTS

In 2014, the Hartford, through its broker Insurance, Inc., approached Harborview about purchasing insurance coverage for Harborview's docks and piers at Harborview Drive, Baltimore, Maryland. Compl. ¶ 8, ECF No. 1. Harborview was looking to insure a number of its piers, including one that began beyond the eastern side of the building at Pierside Drive and extended into the Baltimore harbor. *Id.* ¶ 9. Accordingly, Harborview obtained from the Hartford a "Marina Operators Legal Liability and Boat Dealer Policy," Policy No. 30 ML HS9073 (the "Policy"), effective June 26, 2014 to June 26, 2015 providing aggregate combined coverage of $5.1 million. Compl., Ex. 1, ECF No. 1-1.

Hartford submits that when Harborview applied for insurance the pier was actually in a state of advanced deterioration, and was inherently defective in design and/or construction. Compl. ¶ 10. Despite these deficiencies, says the Hartford, Harborview represented to it that the pier was of substantially newer construction, reconstruction, or refurbishment and in substantially new, or as good as new condition. *Id.* ¶ 11. The Hartford says Harborview never disclosed the true condition of the pier. *Id.* ¶ 12.

On November 22, 2014, the pier failed, *id.* ¶ 17, in consequence of which Harborview made a claim under the Policy for $5.1 million (the "Claim"). *Id.* ¶ 18. Pursuant to its rights under the Policy, the Hartford investigated the Claim, *id.* ¶ 19, but at the conclusion of its

investigation, decided that the Claim was not covered because the pier failure was due to age, wear and tear, gradual deterioration, wasted condition, inherent vice or defective repair, *not* due to a fortuity or any covered risk. *Id*. ¶¶ 20–21. The Hartford thus denied coverage. *Id*. ¶ 20.

On these facts, the Hartford seeks a declaratory judgment that (1) there is no coverage for the claim under the Policy, (2) the claim is not covered for want of fortuity, (3) Harborview breached the Conditions of Coverage under the Policy, and (4) coverage for the pier under the Policy is void and unenforceable. *Id*. ¶¶ 25, 29, 35, 38.[2]

Harborview has counterclaimed against the Hartford, alleging breach of contract under the Policy and failure of the insurance company to act in good faith, and asks for damages in the amount of $5.1 million. Def's. Counterclaims ¶¶ 41, 43, 46, 49, 51, 60, ECF No. 10. Harborview submits that prior to issuing the Policy, the Hartford failed to survey or investigate the pier and the rest of the insured property, and therefore failed to draft a policy that properly accounted for Harborview's freestanding piers. *Id*. ¶ 12. According to Harborview, the Hartford also failed to properly or fully investigate the cause of the collapse, ignoring the role played by a third-party contractor. *Id*. ¶ 21. Harborview further submits that the Hartford reinterpreted the Policy in a way that created exclusions to coverage that did not exist at the time of the suffered loss. *Id*. ¶ 20.

Then came the Hartford's third-party Complaint against C.A. Lindman, seeking contribution and indemnification against Harborview's counter-claims.[3] ECF No. 38. The

---

[2] The Hartford originally sought declaratory judgment in admiralty, claiming that the Court had jurisdiction over the dispute based on both admiralty jurisdiction and diversity jurisdiction. Harborview filed a Motion for Partial Dismissal for Lack of Subject Matter Jurisdiction (ECF No. 6), asking that the Court dismiss any claim based on admiralty. On December 9, 2016, the Court granted Harborview's Motion, declaring that it lacked admiralty jurisdiction in the case and that it would proceed solely pursuant to diversity jurisdiction. *See* ECF Nos. 26, 27.

[3] C.A. Lindman had a contract with 100 Harborview Condominium—a high-rise condominium building unaffiliated with Harborview but located adjacent to the pier—to complete construction and maintenance on the façade of the condominium. *See* ECF No. 42. Lindman's use of Harborview's pier was allowed by

Hartford argues that if it is held liable to Harborview, C.A. Lindman should be deemed responsible for any required payments because the damages allegedly sustained by Harborview were the proximate result of the actions of C.A. Lindman, its agents or subcontractors. Harborview then filed its own cross-claim against C.A. Lindman (ECF No. 42), asserting that if the Hartford's claims for declaratory relief are granted fully or in part, C.A. Lindman should be held liable for the damages arising from and related to the pier collapse. C.A. Lindman has answered both complaints. ECF Nos. 46, 73. Harborview has also filed yet another third-party claim (i.e., impleader), this time against Coleman Consulting, alleging that Coleman, as the consultant on the façade construction and maintenance project, was negligent in its use of the pier and was therefore jointly and severally liable with C.A. Lindman for the damages and liabilities arising from the collapse.[4] ECF No. 50. According to Harborview, Coleman breached its duty of care to ensure that the pier was used in a safe and non-negligent manner by failing to inspect the pier or ascertain its load-bearing capacity.

On March 29, 2017, Coleman filed a Motion to Dismiss Harborview's Third-Party Complaint (ECF No. 53) on the grounds that the Third-Party Complaint fails to state a claim and, in the alternative, because the Court lacks subject matter jurisdiction over the claim.[5] Coleman

---

the condominium by reason of an easement the condominium held *vis-à-vis-* the pier. *See* ECF No. 42 at ¶ 16.

[4] Harborview alleges that Coleman also had a contract with 100 Harborview Condominium, *see* footnote 3, *supra*, wherein Coleman agreed to provide consulting, inspection, oversight, and management services for the construction phase of the façade rehabilitation. *See* ECF No. 50 at ¶ 9. According to Harborview, Coleman also created the Site Plan for the façade project. *Id.* at ¶ 10. Coleman's relationship to the pier, as was C.A. Lindman's, was based on the condominium's easement as to the pier.

[5] The Court held a hearing on June 9, 2017, at which it intended to hear oral argument on Coleman's Motion to Dismiss. However, the hearing did not progress past discussions regarding the interplay between the present case and a parallel state case in the Baltimore City Circuit Court ("the Baltimore case"): Harborview Marina and Yacht Club Community Association, Inc. v. C.A. Lindman, Inc. *et al.*, Case No. 24-C-16005758. While numerous options for avoiding duplicative litigation were discussed and the hearing adjourned so the parties could contemplate those positions, the parties eventually failed to reach unanimity as to how to proceed. Accordingly, the Court has decided to go forward on Coleman's Motion to Dismiss without the need for oral argument. *See* ECF No. 77.

argues that Federal Rule of Civil Procedure 14 does not permit the claim Harborview asserts against it and that the Court lacks supplemental jurisdiction over it.

## II. STANDARDS OF REVIEW

### A. Lack of Subject Matter Jurisdiction

A party may move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) where the court lacks subject matter jurisdiction over the claims alleged in the complaint. Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited subject matter jurisdiction: they "possess only the jurisdiction authorized them by the United States Constitution and by federal statute." *See United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009) (citing *Bowles v. Russell*, 551 U.S. 205, 127 S. Ct. 2360, 2365, 168 L.Ed.2d 96 (2007)). As the party asserting jurisdiction, the plaintiff bears the burden of proving that the district court has subject matter jurisdiction. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). When a district court determines that it lacks subject matter jurisdiction over an action, it must dismiss the action. *Vuyyuru*, 555 F.3d at 347 (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506-07, 126 S. Ct. 1235, 163 L.Ed.2d 1097 (2006)). In considering whether to dismiss for lack of jurisdiction, the court may consider "evidence outside of the pleadings without converting the proceeding into one for summary judgment." *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005) (quoting *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768); *see also Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995) ("[T]he court may consider the evidence beyond the scope of the pleadings to resolve factual disputes concerning [subject matter] jurisdiction.").

## B. Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) governs dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and quotation marks omitted). "[I]n evaluating a Rule 12(b)(6) motion to dismiss, a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The court will also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor . . . ." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). But "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts . . . ." *Nemet Chevrolet*, 591 F.3d at 255. "[A] complaint must contain 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)) (quotation marks omitted). "Facial plausibility is established once the factual content of a complaint 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 256 (quoting *Iqbal*, 129 S. Ct. at 1949). "[T]he complaint's factual allegations must produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.'" *Id.* (quoting *Iqbal*, 129 S. Ct. at 1952).

## C. Supplemental Jurisdiction

Supplemental jurisdiction is governed by 28 U.S.C. § 1367, which provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have

supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy. . . . Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a). Claims are part of the same case or controversy if they stem from the same set of facts. *See Rosmer v. Pfizer Inc.*, 263 F.3d 110, 114–15 (4th Cir. 2001) ("[S]ince the pendent claims of the absent class members raise similar questions of law and fact to Rosmer's claim, they are necessarily a 'part of the same case or controversy.'"). Moreover, only a "loose factual connection between the claims" is required. *Posey v. Calvert Cnty. Bd. of Educ.,* 262 F.Supp.2d 598, 600 (D.Md. 2003). Supplemental jurisdiction is discretionary and district courts are permitted to decline to exercise supplemental jurisdiction over a claim if the claim substantially predominates over the claim or claims over which the district court has original jurisdiction. *See* 28 U.S.C. § 1367(c)(2). The doctrine of supplemental jurisdiction "is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988). Courts also consider convenience, fairness to the parties, comity, and judicial economy. *Id.* at 350, n.7.

### III. ANALYSIS

Although Coleman "moves to dismiss [Harborview's] third-party complaint for failure to state a claim and, in the alternative, for lack of subject matter jurisdiction," the sequence of the arguments is actually backwards. If the Court lacks jurisdiction over the case, there would be no occasion to consider whether Harborview has or has not stated a cognizable cause of action. But Coleman is not really saying that a federal court lacks jurisdiction over a declaratory action where the original plaintiff and original defendant are properly before the Court based on

diversity jurisdiction and those parties seek to bring in third parties by way of third party complaints or cross-claims. Clearly a federal court has jurisdiction over such a case so long as the claims against the third parties are appropriately derivative of the claim or claims by the original plaintiff against the original defendant. The proper jurisdictional inquiry, therefore, is whether the third-party claims or cross-claims are, under Federal Rule of Civil Procedure 14, fairly derivative of the original claim or claims.

### A. Harborview's Third-Party Claims Against Coleman Are Proper Under Rule 14

Rule 14(a)(1) states that: "A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). "In assessing third-party claims, the district court is afforded wide discretion." *Crowley v. BWW Law Grp., LLC*, No. CV RDB-15-00607, 2016 WL 4611275, at \*5 (D. Md. Sept. 6, 2016). *See also Glens Falls Indem. Co. v. Atl. Bldg. Corp.*, 199 F.2d 60, 63–64 (4th Cir. 1952). Relevant factors include the introduction of unrelated issues or the undue complication of the original suit. *See L'Occitane, Inc. v. Tran Source Logistics, Inc.*, No. WMN-09-2499, 2010 WL 761201, at \*5 (D. Md. Mar. 2, 2010). "Rule 14 is 'liberally construed' to permit impleader in the interest of judicial economy." *Brethren Mut. Ins. Co. v. Sears, Roebuck & Co.*, CIV. WDQ–12–0753, 2014 WL 3428931, \*5 (D.Md. July 10, 2014). "Impleader [under Rule 14] will be liberally allowed, if it will prevent duplication of suits based on closely related matters." *Certain Underwriters at Lloyd's, London v. R.J. Wilson & Associates, Ltd.*, CIV. CCB–11–1809, 2012 WL 2945489, \*3 (D.Md. July 17, 2012).

Ordinarily, a claim against a third-party under Rule 14 must be "derivative" of the plaintiff's original claim. *See L'Occitane, Inc. v. Tran Source Logistics, Inc.*, No. WMN-09-2499, 2010 WL 761201, at \*3 (D. Md. Mar. 2, 2010). Importantly, counter-claims and other

third-party claims cannot be considered. *Id.* ("It is settled beyond dispute that a third party claim can be maintained only if the liability it asserts is in some way derivative of the main claim."); *Crowley v. BWW Law Grp., LLC*, No. RDB-15-00607, 2016 WL 4611275, at *5 (D. Md. Sept. 6, 2016). *But see Country Mut. Ins. Co. v. Rocky Mountain Const. Co., LLC*, 2013 WL 438940, at *4 (D. Colo. Feb. 5, 2013) (considering not only on the claims in the original complaint, but also those raised in other pleadings, including defenses and counterclaims). However, in cases in which the plaintiff's original claim is a declaratory judgment action, applying Rule 14 can lead to inconsistent results. This was well stated in *State Coll. Area Sch. Dist. v. Royal Bank of Canada*, 825 F. Supp. 2d 573, (M.D. Pa. 2011):

> In the usual Rule 14 case, a plaintiff brings a cause of action against a defendant for damages, and the defendant/third-party plaintiff then impleads a third party that he believes is either partially or wholly liable to him for the potential damage award. Typically, the third-party plaintiff charges that the third-party defendant must indemnify the third-party plaintiff should it be ordered to pay damages to the plaintiff. A more challenging question arises where the action does not fit comfortably into the classic indemnity model; that is, where the underlying complaint is not one for monetary damages, but instead seeks a declaratory judgment against the defendant.
>
> The challenge, as the parties aptly demonstrate, is that the declaratory judgment action does not necessarily involve a claim in which the original defendant may be "liable," in the usual understanding of the word, to the plaintiff. In a declaratory judgment, action, the decision is simply whether or not certain rights or duties exist.

*Id.* at 579.[6] The court went on to state, "the modern trend appears to support liberal construction of Rule 14(a) and permit third-party actions to be filed in declaratory judgment cases where an

---

[6] *See Nat'l Fire Ins. Co. of Hartford v. Nat'l Cable Television Coop., Inc.*, 2011 WL 1430331, at *1 (D. Kan. Apr. 14, 2011) ("Some courts have permitted third-party claims to proceed in declaratory judgment actions, despite a lack of derivative liability, stating, 'Rule 14(a) [does] not preclude all third-party actions in which the third-party defendant would not be held liable directly for the judgment of the original defendant.' . . . Otherwise, according to these courts, 'a strict interpretation of Rule 14(a) makes it impossible for defendants to declaratory judgment actions to maintain a third-party complaint, as the defendant to a declaratory judgment action will never be found liable to the plaintiff.' . . . [These] cases . . . indeed appear to have carved out an exception—a declaratory judgment action exception—to the

adverse ruling on the underlying action may cause the original defendant to suffer a loss for which the third-party defendant may be liable." *Id*. at 581. *See also Hartford Cas. Ins. Co. v. ACC Meat Co., LLC*, 2011 WL 398087, at *2 (M.D. Pa. Feb. 2, 2011).

Here, if Coleman is not made a party to the action, an adverse ruling in the underlying action may very well cause Harborview to suffer a loss for which Coleman may in fact be liable.

In *Colony Ins. Co. v. Peterson*, 2012 WL 1867047 (M.D.N.C. May 22, 2012), *report and recommendation adopted in part, rejected in part*, 2012 WL 4369666 (M.D.N.C. Sept. 24, 2012), the court faced a nearly identical procedural situation and permitted a third-party complaint under a liberal interpretation of Rule 14. *Id*. at *24. Following a fire, the owners of the relevant property made claims against their insurance company. *Id.* at *4. The insurer filed suit against the owners seeking a judicial declaration either that it had the authority to rescind the policy or that its obligations were limited in certain respects by the terms of the policy. *Id*. After filing a counter-claim and cross-claims, two of the defendants filed a third-party complaint against the company and the company's employee who had prepared the insurance application. *Id.* The third parties filed a motion to dismiss pursuant to Rule 14, which the court rejected "because they [took] too narrow a view of [Rule] 14." *Id*. at *24. Although, unlike the third-parties in *Colony*, Coleman did not play a role in the formulation of Harborview's insurance application, Coleman was, according to Harborview, still responsible for the pier collapse which

---

plain language of Rule 14(a).") (citing *Old Republic Ins. Co. v. Concast, Inc.,* 99 F.R.D. 566, 569 n. 1 (S.D.N.Y.1983) (refusing to "read Rule 14(a) as a blanket prohibition against third-party complaints in [declaratory judgment] actions")); *McGee v. United States,* 62 F.R.D. 205, 208–09 (E.D.Pa.1973); *Hartford Cas. Inc. Co. v. Moore,* No. 08–cv–1350, 2010 WL 323502, at *3 (C.D.Ill. Jan. 20, 2010)). *See also O'Bannon v. Friedman's, Inc.*, 437 F. Supp. 2d 490, 493 (D. Md. 2006) ("Although Plaintiffs in this case are not insured parties, but rather third-parties seeking declaratory judgments against insurers, the same principles of efficiency and fairness apply. It would be incongruous to suggest that simultaneous resolution of the aforementioned issues makes sense in a case where an insured party has impleaded his insurer, but not in a case where an injured party has sought to join both the insured party and the insurer as defendants.").

the Hartford claims is not covered by the Policy. Thus, if the Hartford succeeds against Harborview on its declaratory judgment claim (i.e., there is no coverage for the collapse of the pier under the relevant policy), Harborview may suffer a loss for which Coleman may be liable.

Coleman argues that the *Colony Insurance* case is inapposite because, unlike those third-party defendants, it was not materially involved in the operative facts that gave rise to the main claim. According to Coleman, the operative facts in the Hartford's claim against Harborview relate solely to the terms of the insurance coverage for the pier. Coleman suggests that "the Hartford is [solely] seeking a declaration that no coverage exists under the Policy for the Claim."

Coleman's argument is unpersuasive because its categorization of the Hartford's claim is too narrow. In addition to interpretation of the terms of the insurance coverage, the Hartford's claim against Harborview relates directly to the cause of the pier collapse.[7] Coleman appears to overlook the Hartford's first and second causes of action, which seek a declaration that it is not liable for the pier collapse because the cause of the collapse was not covered by the policy. Accordingly, the operative facts that give rise to and will eventually resolve the Hartford's claim most definitely include the manner in which the pier collapsed and the reasons that it did, which, according to Harborview, materially involve Coleman. In other words, Harborview's claims against Coleman are not merely related to the Hartford's claim, they are clearly "derivative" of the outcome of the main claim.

Nor would permitting Harborview's claim against Coleman introduce previously unrelated issues, unduly complicate the original suit, unduly prejudice Coleman or lead to delay.

---

[7] The following allegations are included in the Hartford's Complaint: "On or about November 22, 2014, the Pier is claimed to have failed. Harborview has made claim under the Policy related to the Pier failure for the amount of $5.1 Million. Hartford conducted an investigation of the Claim . . . [and] determined that the Claim was not covered and issued a denial of coverage for the Claim under the Policy. . . . The claimed Pier failure was due to the age, wear and tear, gradual deterioration, wasted condition, inherent vice or defective repair or defective replacement of parts, and was not due to a fortuity or any covered risk." *Compl.* ¶¶ 17-21.

On the contrary, it would promote judicial economy. *See Noland Co. v. Graver Tank & Mnfr. Co.,* 301 F.2d 43, 49–50 (4th Cir.1962) ("[T]he primary objectives of third-party procedure is to avoid circuity and multiplicity of actions.").[8] The Court holds that Harborview's third-party claims against Coleman are proper under Rule 14.

### B. Harborview Has Stated a Negligence Claim

To establish a *prima facie* case of negligence under Maryland law, a party must prove "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Valentine v. On Target*, 353 Md. 544, 549 (1999) (citations omitted). Harborview has without question stated a facially plausible negligence claim, which would allow the reasonable inference that Coleman may be liable to Harborview for damages stemming from the pier collapse.

### C. The Court Has Determined To Exercise Supplemental Jurisdiction Over Harborview's Claims

An impleader claim that forms part of the same case or controversy as the plaintiff's original claim is deemed supplemental to the original claim. *See* 28 U.S.C. § 1367(a). *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 376, (1978). Because the Court has diversity jurisdiction over the Hartford's declaratory judgment action against Harborview,[9] there is no need for standalone jurisdiction with respect to Harborview's derivative claims against Coleman. As articulated above, Harborview's claims against Coleman clearly form part of the same case or controversy as the claims already posited in the case. Harborview's claims against Coleman, like

---

[8] The Court acknowledges that permitting Harborview's claims against Coleman to proceed here are to some extent at cross-purposes with the parallel litigation in the Baltimore case.
[9] With respect to the original claim, the Court has already ruled that "[b]ecause [the Hartford and Harborview] are completely diverse and the amount in controversy exceeds $75,000, diversity jurisdiction unquestionably exists." *See* ECF No. 26 at 5.

those in the Hartford's declaratory judgment action, in Harborview's counter-claims, and in Harborview and the Hartford's claims against C.A. Lindman, revolve around the collapse of the pier and any and all reasons that it collapsed. There is no reason to believe that Harborview's claims against Coleman will predominate over other issues in the case. In fact, the Court believes it is wise to litigate all the claims in one case.

Accordingly, the Court will exercise supplemental jurisdiction over Harborview's claims against Coleman.

### III.  CONCLUSION

For the foregoing reasons, Coleman's Motion to Dismiss for Failure to State a Claim and for Lack of Jurisdiction (ECF No. 53) is **DENIED**, as set forth in the accompanying Order.

/s/

**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**July 5, 2017**